Cook, J.
Error to the Court of Common Pleas of Mahoning county.
The only question made in this case is whether or not under the circumstances as shown by the pleadings and bill of exceptions the relation of master and servant existed between plaintiff in error and defendant in error at the time of the injury of which defendant in error complains.
The evidence shows that plaintiff in error was engaged in the manufacture of bar iron and for that purpose had a large rolling mill at Hazelton in the county of Mahoning, the iron being rolled into different sizes and shapes therein. One John Ramsey was engaged by the plaintiff in error as the boss roller in one of the mills of such rolling mill, the rolling mill being divided into a number of small mills; the part of the general ■ mill which had a train of rolls being denominated a mill. John Ramsey was engaged as Boss roller over a mill or train of rolls, and was employed under the rules and regulations of the amalgamated association, and, under these 1 ules, he selected his own assistant roller, the roughers and heaters. The iron, when rolled and finished, was to be paid for by the ton, the boss roller receiving forty-nine per cent., the heater twenty-four per cent, and the two roughers twénty-six and one-half per cent, of the amount paid for the rolling or manufacturing of the iron, as prescribed by the scale of the amalgamated asso *438 ciation. Out of the forty-nine per cent. Ramsey was to pay his assistant roller and the laboring men employed in the work. This amount, of forty-nine per cent, to the boss roller, twenty-four and one-half per cent, to the heaters, and twenty-six and one-half per cent, to the roughers, was paid at the office of the company, the same being delivered to the roller, roughers and heaters in envelopes.
It was the duty of the company, the plaintiff in error, to furnish all the machinery and to keep it in repair. The company also gave the size and character of the iron to the boss roller, that was required to be manufactured, this list being hung up in the mill for the information of the workmen.
Over the whole mill, comprising the small mills or trains of rolls, was a general superintendent, employed by the company and paid by it, whose business it was to see that all the iron was properly manufactured and the machinery kept in proper condition.
There was no specified time as to how long the mills should continue in operation, the same being run from month to month, the same as mills generally run, and was subject to the control of the company in that regard, it having the right to continue or discontinue the work at its pleasure. The boss roller could discharge the men engaged by him and hire others at his pleasure. At the same time the company would have a right to complain of the manner in which the men were doing their work and it would be the duty of the boss roller, upon complaint, to discharge the men complained of, and if he did not discharge the same he would be subject to discharge himself.
Mathew Burns, defendant in error, the man injuréd, at the time of his injury was engaged in the mill under Ramsey, as a rougher, and at the time of the injury was engaged in adjusting a set of rolls, as it was his duty to do, and was doing the same under the direction of one Thorn Smith, the assistant roller, employed by Ramsey and acting under him, and while so adjusting the rolls he was injured by a bar of iron being negligently run through the rolls, by the order of the assistant roller, Thorn Smith, who had control over and authority to direct Burns.
*439 It is conceded in argument that this injury occurred by reason of the negligence of Thorn Smith; and the only question made is that the relation between plaintiff in error and John Ramsey was that of independent contractor and contractee, and not that of master and servant, and that, therefore, plaintiff in error is not liable.
It will be observed that there was no definite time fixed for the continuance of this work; that the mill was to be run as long as the plaintiff in error might desire to run it; that it was a continuous work, to continue for a longer or shorter period, as might be profitable to the company. That it was not an independent undertaking might be suggested by the work being done in the same manner as is ordinarily done in mills of like character, except the amalgamated association fixed the price to be paid for the labor, and the boss roller selected his assistants.
It was not a job, as termed in the books, in any sense of the word, such as the building of a house, the construction of a division of railroad or other undertakings of that character. Moreover the company furnished all the machinery and all the material, directed the manner and sizes into which the material should be rolled; had a general superintendent over the entire works, and at least had the power and authority to dismiss at any time the boss roller or any of his assistants; also all the men were paid at the office of the company.
Under these circumstances we think the relationship of master and servant obtained, and not that of contractor and contractee.
In Tiffin v. McCormack, 34 Ohio St., 638, 642, Judge McIlvaine, in delivering the opinion, uses this language, which we think is directly applicable to this case: "But we are of opinion that the true relation between the city, as proprietor of the-stone quarry, and Ardner, was that of master and servant, instead of employer and independent contractor within the principle of the rule above stated. There was no job or defined" quantity of work contracted for. The services of Ardner were subject to be determined at the pleasure of either party. The compensation was to be measured by the quantity of labor per-, formed. It appears to us to have been an ordinary contract *440 for work and labor, which creates, between the employer and employed, the relation of master and servant within the meaning of the law in regard to that subject. It is true that the service, the quarrying of stone in the employer’s quarry, was. to be done by the use of powder and tools furnished by the employe ; but this condition of the contract, did not affect the legal relation between the parties. It was significant only as a matter affecting the rate of compensation.”
In that case Ardner was to receive so much a perch for the "quarrying of the stone, and was to furnish his own powder and tools, and yet the court held that, there being no “job” or defined quantity of work contracted for, as in this case, but a continuous service, the relation of master and servant obtained.
InBrackett v. Lubke, 4 Allen, 140, Bigelow, C. J., uses this language:
“The distinction on which all the cases turn is this: If the person employed to do the work carries on an independent employment, and acts in pursuance of a contract with his employer by which he has agreed to do the work on certain specified terms, in a particular manner and for a stipulated price, then the employer is not liable. The relation of master and .servant does not subsist between the parties, but only that of ■ contractor and contractee. The power of diiecting and controlling the work is parted with by the employer, and given to thn contractor. But, on the other hand, if work is done under a general employment, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable, because he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it, if he deems it necessary or. expedient. This distinction is recognized in the cases adjudged by this court. Sproul v. Hemmingway, 14 Pick., 1; Stone v. Codman, 15 Pick., 299; Hilliard v. Richardson, 3 Gray, 349; Linton v. Smith, 8 Gray, 147.”
In the case at bar, as in that of Brackett v. Lubke, supra, the work was done under a general employment and was for a stipulated price, and the employer had the right and power of controlling the manner and time of executing the work, or of *441 reírrining from doing it, if he deemed it necessary or expedient. The payment to Ramsey and the heaters and roughers, or the division of the amount per ton between them, was a mere matter of fixing the price or wages, as arranged between the amalgamated association and the Andrews Brothers Company, and from the entire evidence, it appears that the employment in this case only differed from the manner in which employes are generally employed in the particular that the boss roller was to receive a certain sum per ton for the idling of the iron, and was to select his own assistants. In every other respect it was in accordance with the general terms of employment of ser* vants. From the evidence and by authority it seems to us that there can be no question but that the relation of master and servant obtained and not that of contractor and contráete?. See also Rummell v. Dilworth, 2 Atl .Rep., 355, (111 Pa. St., 343).
Titos. N. Sanderson, for Plaintiff in Error.
William Anderson and B. H. Moore, for Defendant in Error..,
* We, therefore, find no error in the charge of the court, and that the verdict was supported by the testimony, and these two assignments being the only ones urged by plaintiff in error, and upon which the question was made, the judgment of the court of common pleas must be affirmed.